

# JORDAN & DUNN
## LAW FIRM, LLC

D. Bradley Jordan
*bradjordan@comporium.net*

October 23, 2015

Allison Harvey
Town Administrator, Town of Clover
PO Box 1060
Clover, SC  29710

RE:     Amber Mahaffey v. Town of Clover and Clover Police Department

Dear Ms. Harvey:

This firm has been retained to represent Amber Mahaffey. Attached please find a copy of the Summons and Complaint we have filed on her behalf which is being served upon you on behalf of the Defendants in this action.

Sincerely,

D. Bradley Jordan
Attorney

cc:     Amber Mahaffey

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | SIXTEENTH JUDICIAL CIRCUIT |
| COUNTY OF YORK ) | |
| ) | |
| Amber Mahaffey, ) | Case No.: 2015-CP-46-3071 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CERTIFICATE OF SERVICE |
| ) | |
| Town of Clover, ) | |
| Clover Police Department, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

      I hereby certify that I have served a copy of the **Summons and Complaint** on Allison Harvey as Town Administrator on behalf of the defendants by placing a copy of the same in the United States Post Office, postage prepaid, certified, restricted delivery and return receipt mail, this 23 day of October 2015, and addressed as follows:

Allison Harvey
Town Administrator, Town of Clover
PO Box 1060
Clover, SC  29710

 

J. Suzanne Miller, Paralegal
D. Bradley Jordan
Jordan & Dunn, LLC
PO Box 11785
Rock Hill, South Carolina 29731
(803) 817-7999
Attorney for Plaintiff

Rock Hill, South Carolina

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF YORK | ) | |
| | ) | |
| Amber Mahaffey | ) | CIVIL ACTION COVERSHEET |
|                  Plaintiff(s) | ) | 2015-CP – 46- 3071 |
| vs. | ) | |
| | ) | |
| Town of Clover | ) | |
| Clover Police Department | ) | |
|                  Defendant(s) | ) | |

Submitted By: D. BRADLEY JORDAN
Address: 546 East Main Street, Rock Hill, SC 29730

| SC Bar #: | 0015288 |
|---|---|
| Telephone #: | 803-817-7999 |
| Fax #: | 803-817-9704 |
| Other: | |
| E-mail: | bradjordan@comporium.net |

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION (Check all that apply)
*If Action is Judgment/Settlement do not complete*

☒ JURY TRIAL demanded in complaint.     ☐ NON-JURY TRIAL demanded in complaint.
☐ This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☒ This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION (Check One Box Below)

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Assault/Slander/Libel (300) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (410) |
| ☒ Employment (120) | ☐ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☐ Foreclosure (420) |
| ☐ General (130) | Previous Notice of Intent Case # | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | 20____-CP-____-_____ | ☐ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | ☐ Notice/ File Med Mal (230) | ☐ Personal Injury (350) | ☐ Possession (450) |
| | ☐ Other (299) | ☐ Wrongful Death (360) | ☐ Building Code Violation (460) |
| | | ☐ Other (399) | ☐ Other (499) |

| Inmate Petitions | Administrative Law/Relief | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Reinstate Drv. License (800) | ☐ Death Settlement (700) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Judicial Review (810) | ☐ Foreign Judgment (710) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Relief (820) | ☐ Magistrate's Judgment (720) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Permanent Injunction (830) | ☐ Minor Settlement (730) | ☐ Municipal (930) |
| | ☐ Forfeiture-Petition (840) | ☐ Transcript Judgment (740) | ☐ Probate Court (940) |
| | ☐ Forfeiture—Consent Order (850) | ☐ Lis Pendens (750) | ☐ SCDOT (950) |
| | ☐ Other (899) | ☐ Transfer of Structured Settlement Payment Rights Application (760) | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | | | ☐ Public Service Comm. (990) |

| Special/Complex /Other | | | |
|---|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | ☐ Confession of Judgment (770) | ☐ Employment Security Comm (991) |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | ☐ Petition for Workers Compensation Settlement Approval (780) | ☐ Other (999) |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) | ☐ Other (799) | |
| ☐ Other (699) | ☐ Motion to Quash Subpoena in an Out-of-County Action (660) | | |
| | ☐ Sexual Predator (510) | | |

Submitting Party Signature: _D. Bradley Jordan_     Date: October 7, 2015

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

SCCA / 234 (06/2013)     Page 1 of 2

## FOR MANDATED ADR COUNTIES ONLY

Aiken, Allendale, Anderson, Bamberg, Barnwell, Beaufort, Berkeley, Calhoun, Charleston, Cherokee, Clarendon, Colleton, Darlington, Dorchester, Florence, Georgetown, Greenville, Hampton, Horry, Jasper, Kershaw, Lee, Lexington, Marion, Oconee, Orangeburg, Pickens, Richland, Spartanburg, Sumter, Union, Williamsburg, and York

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**You are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs. (Medical malpractice mediation is mandatory statewide.)

4. Cases are exempt from ADR only upon the following grounds:

    a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

    b. Requests for temporary relief;

    c. Appeals

    d. Post Conviction relief matters;

    e. Contempt of Court proceedings;

    f. Forfeiture proceedings brought by governmental entities;

    g. Mortgage foreclosures; and

    h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:** **You must comply with the Supreme Court Rules regarding ADR.
Failure to do so may affect your case or may result in sanctions.**

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF YORK ) | CIVIL ACTION NO.: 2015-CP-46-3071 |
| ) | |
| Amber Mahaffey, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **SUMMONS** |
| Town of Clover, ) | |
| Clover Police Department, ) | **(Jury Trial Demanded)** |
| ) | |
| Defendant. ) | |
| _____ ) | |

**TO: THE DEFENDANT NAMED ABOVE:**

**YOU ARE SUMMONED AND REQUIRED** to answer the Complaint in this Action of which a copy is herewith served upon you, and to serve a copy of your answer on the subscribed at his office, 546 East Main Street, Post Office Box 11785, Rock Hill, South Carolina 29731, within thirty (30) days after the service hereof, exclusive of the day of such service, and if you fail to answer the Complaint within the prescribed time, a judgment by default may be entered against you for the amount or other remedy requested in the attached complaint.

D. Bradley Jordan
Jordan & Dunn, LLC
546 East Main Street
P.O. Box 11785
Rock Hill, SC 29730
bradjordan@comporium.net
803-817-7999

10/7, 2015
Rock Hill, South Carolina

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF YORK ) | CIVIL ACTION NO.: 2015-CP-46-3071 |
| ) | |
| Amber Mahaffey, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **COMPLAINT** |
| Town of Clover, ) | |
| Clover Police Department, ) | **(Jury Trial Demanded)** |
| ) | |
| Defendant. ) | |
| _____) | |

## PARTIES AND JURISDICTION

1. The Plaintiff is female and a citizen and resident of Gaston County, North Carolina and the Defendant is a municipality/Chartered Town located in the norther part of York County, South Carolina. The Town of Clover maintains several departments including but not limited to a Police Department. The acts and omissions complained of occurred in the Town of Clover, County of York, South Carolina. At all relevant times the Plaintiff was an employee of the Defendant and her job performance met the reasonable expectations of her employer.

2. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 USC§ 2000(e) et seq., for sex discrimination, sexual harassment, retaliation and violation of the equal pay act.

3. Plaintiff filed two separate charges of discrimination, one on or about January 2, 2014 which was for sexual harassment and the second was filed on or about August 8, 2014 for retaliation. Plaintiff has exhausted her administrative remedies, received both of the Dismissal and Notice of Right to Sue from the EEOC and this action is timely filed.

## FACTUAL ALLEGATIONS

4.  Plaintiff began work for the Defendant, Town of Clover/Clover Police Department, on or about March 19, 2009 as a dispatcher. Plaintiff is a white female, date of birth, August 29, 1985 and is currently 30 years of age.

5.  In or about May, 2013, Plaintiff reported two incidents involving Officer Ghorley, a reserve police officer with Clover Police Department. She reported them to her direct Supervisor Sergeant Trey Miller. The incidents were as follows: Plaintiff was sitting at the CAD computer in the dispatch area of the Clover Police Department when Officer Ghorley walked into the dispatch area. Officer Ghorley reached up and rubbed Plaintiff's right forearm. Plaintiff asked Officer Ghorley at that time why he rubbed her arm and he said "I was curious to know how soft it was." Plaintiff then told Office Ghorley not to do that.

6.  A few weeks after the first incident, in May, 2013. Officer Ghorley came in to work the evening shift and came into the dispatch area before signing on duty. Ghorley proceeded to tell the Plaintiff a story about this woman he met in a bar on a previous occasion who wanted to have a threesome with him and a friend. He said the woman had previously offered him oral sex. After completing the story Officer Ghorley stated to Plaintiff, "I like blow jobs" and insinuated he wanted one from Plaintiff. Plaintiff told Ghorley that she did not want to know those type things about him and told him to refrain from making comments like that in the future.

7.  Later that evening Plaintiff told Sergeant Miller of the incident. At that time Plaintiff asked Sergeant Miller to have a talk with the reserve officers

while they were training in their FTO training about their conduct in dispatch. Sergeant Miller advised Plaintiff that he would speak with Officer Ghorley and with the other reserves because he understood that the conversation made the Plaintiff feel uncomfortable. Later that evening, Sergeant Miller advised Plaintiff that he handled the situation by talking to Officer Ghorley about his conduct.

8. Officer Ghorley continued to come to dispatch and talk to Plaintiff. On one occasion, prior to July, 2013, Ghorley relayed an incident to Plaintiff that he experienced while working at the funeral home where he is employed. Officer Ghorley stated that he had picked up the body of an elderly male who had an implanted device to assist with erectile dysfunction. Ghorley stated that when he had taken the body to the funeral home to be processed that the male subject had an erection. He stated he was unsure what to do so he made a phone call to inquire about what he should do about it. After inquiring, he determined there was an activation switch that would activate or release the artificial implant. Ghorley stated that he released the switch several times as to examine how the implant worked. He then stated to Plaintiff that it would be nice to have one of those for himself.

9. On one occasion Officer Ghorley directed a comment towards Plaintiff saying "you're a very beautiful woman."

10. On the evening of 07/19/2013 after 6:00 p.m. Plaintiff was at her work station in the Dispatch area of the Clover Police Department. Reserve Officer Ghorley came into Dispatch area and touched Plaintiff's arm with a cold water bottle. Plaintiff asked Ghorley not to touch her. Ghorley left the dispatch area only to return later in the evening, at which time Ghorley put his hand in Plaintiff's

hair and wiggled it from side to side. Plaintiff again asked Officer Ghorley not to touch her. Later that night Officer Ghorley returned to the Dispatch area once again and touched Plaintiff's left arm. Plaintiff asked in a firm tone that he not touch her, at that time Officer Ghorley laughed and kicked Plaintiff's chair.

11. Plaintiff requested over the police radio that Officer Phillip Hawkins (who was standing in as Supervisor for the shift that night,) return to the Police Department. Plaintiff wanted to address this issue with him.

12. Plaintiff advised Officer Hawkins of the incidents that had occurred and told him at that time that after every incident she requested that Officer Ghorley not touch her in a firm tone so that there were no misconceptions that it was unacceptable for him to touch her or act in that manner.

13. Officer Hawkins advised Plaintiff that there were several ways he could handle this situation. He stated that he would let Plaintiff know what she could do or needed to do, and requested that she let him know if it happened again throughout the night.

14. After Officer Hawkins left the police department, Officer Ghorley returned to the dispatch area and made physical contact with Plaintiff again by touching her arm. At that time Plaintiff once again asked him not to touch her in a firm tone. After Ghorley left the dispatch area Plaintiff requested over the police radio that Officer Hawkins call her on the telephone.

15. Officer Hawkins called Plaintiff on the telephone and Plaintiff advised him again that Officer Ghorley had touched her. Officer Hawkins arrived on scene at the Police Department Officer Hawkins asked Officer Ghorley to sit in the Dispatch area so that Plaintiff could be relieved to speak with Officer Hawkins outside in privacy away from Officer Ghorley.

16.     Plaintiff told Officer Hawkins at that time that Officer Ghorley had touched her again. Officer Hawkins spoke with Plaintiff about reporting the incidents and making it a formal complaint. He advised Plaintiff that she could call Captain Dover, wake him up in the late hour and ask him what Plaintiff could do or should do and he also advised Plaintiff that he could pull Officer Ghorley aside and speak with him directly.

17.     When Plaintiff returned to the dispatch area, Plaintiff was sitting in the chair at the CAD computer and Officer Hawkins was sitting in a chair by the NCIC computer. Officer Ghorley walked into the dispatch area and touched Plaintiff's neck. This occurred in front of Officer Hawkins.

18.     At this point, Officer Hawkins told Officer Ghorley to go outside with him. At that time Officer Hawkins proceeded to get out of the chair he was sitting in to walk to the back door, Officer Ghorley proceeded to follow him but before Officer Ghorley left the dispatch area (outside the presence of Officer Hawkins) Officer Ghorley reached over and touched the right side of Plaintiff's breast underneath her arm and walked out of the dispatch area.

19.     Plaintiff yelled for him to never touch her again. Plaintiff yelled loud enough for Officer Hawkins to hear. Officer Ghorley and Hawkins both went out the back door. A short time passed and Officer Hawkins returned to the dispatch area to speak with Plaintiff. He advised Plaintiff that he spoke with Officer Ghorley about the events and advised him that his conduct made Plaintiff feel uncomfortable. Officer Hawkins advised Plaintiff that Officer Ghorley told him no one had ever spoken to him about this issue. Officer Hawkins advised Plaintiff that he would call Captain Dover later that day and speak with him about how to handle the situation.

20.     Plaintiff also spoke with Captain Dover and advised him of the same incidents. When Plaintiff spoke to Captain Dover on or about Saturday 07/20/2013 He advised Plaintiff that he spoke with Chief Randy Grice of the Clover Police Department. Captain Dover stated that Chief Grice would take care of the situation. Plaintiff was unaware that Captain Dover had spoken with Chief Grice about this situation until he advised Plaintiff on Saturday evening 07/20/2013.

21.     On or about August, 2013, even though Ghorley had been instructed not to have contact with the Plaintiff, the Defendant scheduled both Ghorley and the Plaintiff to work the same shift.  Plaintiff informed her supervisor that she could not work with Ghorley.  She was allowed to leave and then later was counseled on or about August 26, 2013 about not leaving her post until the end of her shift.

22.     On approximately Wednesday, November 13, 2013 at around 9:00PM, Plaintiff was in dispatch, answering the phone.  Plaintiff answered the phone saying "Clover Police." No one said anything to Plaintiff.  Plaintiff again stated "Clover Police" Plaintiff heard Ghorley saying "Damn Girl".  A short time later the phone rang again. Plaintiff answered the phone saying "CLOVER POLICE" It was Officer Ghorley. He stated that he had accidently "butt dialed" the police department that it wasn't a prank call.

23.     Approximately November 19, 2013, Plaintiff was standing in dispatch speaking with officer Andrew Rollins when officer Ghorley came down the stairs.  Officer Ghorley stood in the old dispatch area.  After several minutes had passed he started to speak with officer Rollins.  While officer Rollins was speaking with Officer Ghorley, Ghorley threw his hand up in a waving motion and said "Can I speak to you?" then proceeded to wave at Plaintiff saying "Hey" while waving his hand.  After speaking with officer Rollins for several minutes their conversation ended and he left.

24. Plaintiff made a phone call to Chief Randy Grice. He returned her call. Chief Grice admitted that he knew Ghorley was there even though he had been instructed to not have contact with Plaintiff. Chief Grice told Plaintiff, "I'll take care of it." Plaintiff then asked Chief Grice how much longer she would have to deal with this. Chief Grice then said to Plaintiff, "I said I would take care of it." Several minutes later Plaintiff informed her direct supervisor, Sergeant Trey Miller that she needed to go home. Sgt. Miller said "Ok". He made a phone call and instructed Plaintiff that Dispatcher Amick would be in the office shortly to relieve her. Plaintiff then left when Dispatcher Amick appeared.

25 Despite the fact that Defendant continually placed Ghorley in positions to have direct contact with Plaintiff, through no fault of her own, and knowing that Ghorley continued to make contact with her, the Defendant wrote Plaintiff up for having to leave work when she became upset. The write up requires Plaintiff to have a doctors' note if leaving early. This is a requirement for Plaintiff only and is not included in the requirements for leave in the handbook.

26. In spite of knowing about Officer Ghorley's ongoing harassment, the Clover Police Department continued to employee him and continued to place him on shifts where he would have contact with Plaintiff. Plaintiff was then written up and given a reprimand on November 26, 2013 after reporting harassment. This was a final warning.

27. Plaintiff was wrongly subjected to an environment wherein she was exposed to sexual harassment. Clover Police Department had knowledge of the harassment since July, 2013, yet they have failed to take appropriate action. The reporting of sexual harassment was a motivating factor that resulted in Plaintiff being written up. The sexual harassment is in violation of Title VII of the Civil Rights Act of 1964.

28.     Plaintiff filed a charge of discrimination/sexual harassment on or about January, 2014.

29.     The sexual harassment and the fact that the Clover Police Department and/or Town of Clover continued to allow the person committing this sexual harassment against Plaintiff to continue to harass Plaintiff and have contact with Plaintiff has caused Plaintiff incalculable and continuing mental anguish and emotional distress.

30.     Plaintiff had heart surgery in December, 2006.  Plaintiff's supervisor, Sergeant Trey Miller, was aware of this health issue.  Plaintiff was also in a wreck on or about May 5, 2014 and had problems with her back and kidneys as a result.  Plaintiff also began having problems with blackouts or syncope episodes.  Plaintiff informed her direct supervisor, Sergeant Trey Miller and Captain David Dover of the health issues related to the automobile wreck. Plaintiff also informed them that she was on a 30 day heart monitor as a result of the syncope episodes.  Plaintiff went on the heart monitor on or about June 3, 2014. Defendants knew that Plaintiff had vasovagal episodes where she would pass out. In fact, an ambulance had to be called to work in April, 2014 due to this medical condition. Plaintiff also informed the Chief that she had previously been diagnosed with PTSD.

31.     During this period of time, May – June, 2014, Plaintiff had to be out of work for health reasons to attend doctor's appointments.  These included tests for kidneys and appointments to the cardiologist.   At all times, Plaintiff made sure to abide by the Town of Clover policy when she had to be off for doctor's appointments.

32.     On June 19, 2014, at 9:00 a.m., Plaintiff was contacted to attend a meeting at the police department with Chief Randy Grice, Allison Harvey-Town

Administrator, and also Barbra Denny-Human Resources. After discussing her absences, Plaintiff was terminated from her employment with the Clover Police Department.

## FOR A FIRST CAUSE OF ACTION
### (Title VII, Sexual Harassment, hostile work environment)

33. The allegations above are re-alleged herein as if repeated verbatim.

34. The sexual harassment of Plaintiff was unwelcome, based on sex, sufficiently severe or pervasive to alter the conditions of employment, and created an abusive atmosphere. The Defendant was aware of the harassment and took no reasonable steps to prevent it. The actions and omissions of the Defendant were a knowing and willful violation of Title VII.

35. As a direct result and consequence of the sexual harassment of Plaintiff by Defendant (hostile work environment) the Plaintiff has and will experience pain and suffering, mental anguish, emotional distress and other compensatory damages.

36. As a further direct result and consequence Plaintiff is entitled to compensatory damages, punitive damages, attorney's fees and costs from Defendant.

## FOR A SECOND CAUSE OF ACTION
### (Retaliation Title VII)

37. The allegations contained above are re-alleged, all of them, as if repeated verbatim herein.

38. The Plaintiff engaged in activities protected by Title VII as alleged hereinabove, including reporting sexually offensive conduct by a co-employee Ghorley. As a direct result and consequence her employment was terminated.

39. The Plaintiff was terminated for pretextual reasons by Defendant and the real reasons were unlawful and a violation of Title VII.

40. The Defendants actions were a knowing and willful violation of federal law and the Plaintiff is therefore entitled to punitive damages.

41. As a direct result and consequence of the unlawful retaliation and

termination of the Plaintiff by Defendant she will lose money in the nature of wages and benefits, experience pain suffering, mental anguish, emotional distress and other compensatory damages.

42. As a further direct result and consequence Plaintiff is entitled to damages from Defendant, including, back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs.

## FOR A THIRD CAUSE OF ACTION
### (Disability Discrimination in violation of the ADAAA)

43. The allegations contained above are re-alleged herein as if repeated verbatim.

44. Plaintiff has a disability within the meaning of the ADAAA, and/or was regarded as having such a disability and/or had a history of such a disability.

45. The Defendant discriminated against the Plaintiff because of her disability within the meaning of the ADAAA by terminating her for false and pretextual reasons.

46. The violation of the ADAAA by Defendant was a knowing and willful violation of the ADAAA and entitled the Plaintiff to punitive damages.

47. As a direct result and consequence of Defendant's unlawful discrimination, the Plaintiff has and will lose money in the nature of wages and benefits, has and will experience emotional distress, mental anguish and other compensatory damages. Plaintiff is entitled to back pay, reinstatement, front pay, compensatory damages, punitive damages and attorney's fees from Defendant.

48. As a further direct result and consequence Plaintiff is entitled to back pay, front pay, liquidated damages, attorney's fees and costs.

## FOR A FOURTH CAUSE OF ACTION
## (FMLA)

49. The allegations contained above are re-alleged herein as if repeated verbatim.

50. This cause of action involves application of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. This court has jurisdiction of this action pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1331.

51. At all times material hereto, Mahaffey was an eligible employee and Defendant, Town of Clover/Clover Police Department was a local governmental agency and is an "employer" within the meaning of the FMLA.

52. The Plaintiff had a serious medical condition which required her to miss time from work for treatment. The intermittent leave requested by the Plaintiff was medically necessary.

53. The Defendant employer had knowledge that the employee's requested leave was for an FMLA qualifying reason.

54. The Defendant employer violated the FMLA in that they failed to provide Plaintiff with notice of her rights under the FMLA and failed to provide the leave as requested and instead terminated Plaintiff for missing time from work for the leave requested for an FMLA qualifying reason.

55. As a direct and proximate cause of Defendant's conduct, Plaintiff was terminated and is unemployed. Plaintiff has been and will continue to experience a loss of wages and benefits. Plaintiff is entitled to compensation for lost wages, liquidated damages equal to the back pay damages, medical expenses incurred due to the loss of her benefits, front pay, interest on the sums owed. The Plaintiff is also entitled to attorney's fees and costs.

**WHEREFORE,** Plaintiff prays for judgment against the Defendant for back pay, reinstatement, front pay, liquidated damages, compensatory damages, punitive damages attorney's fees and costs.

Respectfully submitted,

By: _____
D. Bradley Jordan (0015288)
Jordan & Dunn, LLC
546 East Main Street
P.O. Box 11785
Rock Hill, SC 29731
Phone 803-817-7999
bradjordan@comporium.net
Attorney for Plaintiff

___11/7___, 2015

Rock Hill, South Carolina

